## Steele v. Jackson, et al.

(Decided November 30, 1910.)

### Appeal from Laurel Circuit Court.

1. Land—Action to Enforce—Purchase Money—Title—Possession.—A. H. obtained a grant to land in Laurel county in 1796, and in 1853 the heirs of A. H. conveyed it to J. J., who prior to 1860 sold Helton 740 acres by title bond, who died without paying for it. J. J. brought suit and recovered judgment against H. to enforce his lien for the purchase money. J. J. died and the title vested in his son, J. C. J. Held, that J. J. and his vendees have held the land since 1853, and after such a continuous possession without interruption it must be presumed that all the heirs of H. joined in the conveyances and J. J. made out a title from the commonwealth.

2. Same—Conflicting Claims—Senior Patent Controls.—The fact that a patent was issued to R. for part of the land under which defendant Steele does not claim, does not affect the title of J. J., who had the older patent.

3. Constitutional Provision—Limitation.—The present Constitution was adopted in 1891, and no action was instituted under the R. patent within five years thereafter, and under section 251 of the Constitution, there could be no recovery of the land after the lapse of five years, during all which time J. J. and those claiming under him were in peaceable possession of the land. We therefore conclude the court properly adjudged the land to the plaintiff, J. L. Jackson, et al.

H. C. CLAY for appellant.

HAZLEWOOD & JOHNSON for appellees.

Opinion of the Court by Judge Hobson—Affirming.

On March 15, 1796, Anthony Hundley obtained a grant from the Commonwealth of Kentucky for a large body of land in Laurel county. On August 17, 1853, Sherwood W. Hundley and others conveyed this body of land to Jarvis Jackson. Jarvis Jackson prior to 1860, sold to Jesse Helton 740 acres of land by title bond. Helton lived on the land for many years and finally died without paying the purchase money. Jarvis Jackson brought a suit against him to enforce his purchase money lien on the land and in this action in the year 1886, a judgment was recovered directing a sale of the land for the unpaid purchase money. Jarvis Jackson had in the meantime died, leaving an only child, John C. Jackson, who bought the land when it was sold under the judgment. The sale was reported to the court and confirmed, and the court instead of making John C. Jackson a deed, then entered an order that the bond executed by Jarvis Jackson in his lifetime to Jesse Helton be cancelled, the legal title to the land being in John C. Jackson, as the only heir at law of Jarvis Jackson, and he was awarded a writ of possession for it. He took possession and afterwards died leaving two children surviving him. They brought this suit on August 30, 1907, against S. G. Steele, who had encroached upon their boundary. Steele claimed by his answer to be the owner of two tracts, one of 15 acres, and the other of 50 acres, but only about half of the 50-acre tract is included in the plaintiff's boundary. He denied the plaintiff's title to any of the land, and the case having been heard upon the merits, the court entered a judgment in their favor. Steele appeals.

It is insisted for him that the plaintiff showed no title to the land either by record or by adverse possession. There is no question made that the plaintiffs hold the title which Jarvis Jackson had, except it is said that John C. Jackson got no title by his purchase because the court made him no deed, but as he was the only child and heir at law of Jarvis Jackson, the title was vested in him as such, when the title bond to Helton was cancelled, and so the judgment cancelling the bond and putting him in possession of the land vested him with title as fully as if a deed had been made to him as purchaser. It is also insisted that Jarvis Jackson had no title because it is not shown that his grantors were the heirs of the patentee. The deed was made in '53, and as all the

parties are now dead, its recitals may be considered as evidence of the facts recited.  The deed recites that a part of A. Hundley's heirs had conveyed the land to Sherwood W. Hundley, and one of the heirs joins in the deed with Sherwood Hundley to confirm a conveyance previously made by her which was said not to be sufficiently proven for record.  The deed also contains a warranty against the heirs of the patentee.  Since 1853 Jarvis Jackson has held the land under the deed, and none of the heirs of the patentee have set up any claim to it or disturbed him in any way.  The proof shows he also sold a part of it to a man named Sparks.  After such a lapse of time and the possession of the land so long by Jarvis Jackson and his vendees without interruption, it must be presumed that all the Hundley heirs joined in the deeds referred to.  This being true, the plaintiffs made out a title from the Commonwealth.

It is also insisted that there was an older patent issued to James Reynolds which included this land, and that the Hundley patent being inferior to the Reynolds patent, was void.  But Steele in no way connects himself with the Reynolds patent, and it is shown that those who claim under the Reynolds patent disclaim any title to the land in controversy, on the ground that it has been held so long under the junior patent that they have lost their right.  Section 251 of the Constitution of the State is in these words:

"No action shall be maintained for possession of any lands lying within this State, where it is necessary for the claimant to rely for his recovery on any grant or patent issued by the Commonwealth of Virginia, or by the Commonwealth of Kentucky prior to the year one thousand eight hundred and twenty, against any person claiming such lands by possession to a well defined boundary, under a title of record, unless such action shall be instituted within five years after this Constitution shall go into effect, or within five years after the occupant may take possession; but nothing herein shall be construed to affect any right, title or interest in lands acquired by virtue of adverse possession under the laws of this Commonwealth."

This Constitution was adopted in 1891, and no action was instituted by anyone claiming under the Reynolds patent within five years thereafter, although Jarvis Jackson and those claiming under him were in possession of the land.  Helton bought the land before the Civil War.  He lived on it from that time until his death; and

it was held by those claiming under him until John C. Jackson was put in possession under the judgment and he and those claiming under him have since held it. Steele, so far as he shows any title claims under R. L. Ewel who claimed under Jesse Helton, and Helton entered under Jarvis Jackson. We, therefore, conclude that the court properly adjudged the land to the plaintiffs.

Judgment affirmed.